253 P.3d 1113 (2011)
2011 UT App 123
STATE of Utah, in the interest of M.H. and M.J.H., persons under eighteen years of age.
J.M., Appellant,
v.
State of Utah, Appellee.
No. 20110125-CA.
Court of Appeals of Utah.
April 21, 2011.
Eric G. Jacobson, Springville, for Appellant.
Mark L. Shurtleff and John M. Peterson, Salt Lake City, for Appellee.
Martha Pierce, Salt Lake City, Guardian Ad Litem.
Before Judges ORME, THORNE, and CHRISTIANSEN.

DECISION
PER CURIAM:
¶ 1 J.M. (Mother) appeals the termination of parental rights to her two children. The juvenile court found five grounds to support termination of parental rights, including neglect, unfitness, failure to remedy the circumstances *1114 leading to removal, failure of parental adjustment, and token efforts, pursuant to Utah Code section 78A-6-507(1). See Utah Code Ann. § 78A-6-507(1) (2008).[1]
¶ 2 Mother challenges the sufficiency of the evidence to support each ground. However, she does not undertake any specific analysis of the separate grounds for termination found by the juvenile court. The juvenile court "may terminate all parental rights with respect to a parent if the court finds any one of" the grounds enumerated in Utah Code section 78A-6-507. See id. § 78A-6-507(1). We will overturn the juvenile court's decision "only if it either failed to consider all of the facts or considered all of the facts and its decision was nonetheless against the clear weight of the evidence." In re B.R., 2007 UT 82, ¶ 12, 171 P.3d 435. "When a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." Id. Because we need only determine that the evidence was sufficient to support one of the grounds for termination, see In re D.B., 2002 UT App 314, ¶ 13 n. 4, 57 P.3d 1102, we affirm the juvenile court's decision because the evidence clearly supports the ground that Mother failed to remedy the circumstances that caused the children to be in an out-of-home placement and there is a substantial likelihood that she will not be capable of exercising proper and effective parental care in the near future, see Utah Code Ann. § 78A-6-507(1)(d).
¶ 3 The children were removed on January 29, 2010. At the March 1, 2010 dispositional hearing, the juvenile court set a primary goal of reunification and ordered the Division of Child and Family Services (DCFS) to prepare a service plan and provide reunification services for a period not to exceed eight months. Mother was required to complete a substance abuse assessment and follow all recommendations, participate in random urinalyses, complete a domestic violence assessment and follow all recommendations, complete a mental health assessment, participate in a parenting program, maintain regular contact with DCFS caseworkers, visit with the children regularly, provide proof of stable and appropriate housing, and provide proof of a means of support for herself and the children. Mother was also required to follow the requirements of Family Drug Court.
¶ 4 At a July 2010 review hearing, the juvenile court found that Mother had not completed her substance abuse evaluation, had been discharged from drug court, and had not regularly drug-tested. Mother had not maintained regular contact with her DCFS caseworker and had missed visits with the children. Mother completed a substance abuse assessment on July 15, 2010, while in jail. At an August 2010 permanency hearing, the juvenile court found that Mother had made no effort to work on the objectives of the service plan. Because the juvenile court found that the return of the children to Mother would create a substantial risk of detriment to the children, it terminated services and changed the permanency goal to adoption.
¶ 5 The juvenile court considered Mother's efforts up to the time of the December 2010 termination trial. The court gave Mother credit for having completed a parenting program. In November 2010, she had been discharged from jail directly to a residential drug treatment center. Although she was close to graduating from residential treatment, she would then require up to an additional year of intensive outpatient treatment, followed by general outpatient treatment. *1115 The juvenile court found, based upon evidence from her treatment provider, that Mother had been clean for fifty-six days. Mother conceded that she was just at the beginning of her treatment, that she was "not in a stable place," and that she would not be capable of taking custody of her children until she became stable. Mother did not get a mental health evaluation or a domestic violence evaluation, and she could not demonstrate that she had completed domestic violence treatment. At the time of trial, Mother was still residing at the residential treatment center and could not demonstrate that she had stable housing or employment. The juvenile court found that Mother's visitation had been "spotty at best" and that Mother had not seen her children since September 23, 2010. Although the juvenile court found that Mother had made some meaningful changes, the court concluded that she was not in a position to take custody of her children in the near future. The evidence was sufficient to support the juvenile court's determination that Mother had substantially failed to remedy the circumstances that caused the children to be in an out-of-home placement and that there was a substantial likelihood that she would not be capable of exercising proper and effective parental care in the future.
¶ 6 We affirm.
NOTES
[1] We note that the order appealed from is laden with colloquial expressions, rhetorical questions, personal commentaries, and stream-of-consciousness statements. It is apparent that the attorney tasked with preparing the findings simply transcribed the court's ruling from the bench and added paragraph numbers. It does not appear that any attempt was made to edit the informal language of that bench ruling. For example, the court's written findings of fact include many statements like the following: "Then the visitation, that is a big one." "It always makes the Court want to shake her head, when people say I couldn't do it because I was in jail, well yes, but why were they in jail, they need to stay out of jail so they can go do the things they need to do." We recognize that juvenile court judges and the lawyers who appear before them are faced with heavy caseloads and intense demands. Nevertheless, a verbatim transcription of the judge's oral ruling may, as here, result in an order that does not meet the need for precision in language and the generally expected level of formality in written findings.